IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STACY LORRAINE BAKER,

        Plaintiff,

v.

                                                                                                  No. 1:16-cv-902-KRS

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

        Defendant.

**OPINION AND ORDER GRANTING MOTION TO REVERSE OR
REMAND AND REMANDING TO AGENCY FOR
FURTHER PROCEEDINGS**

Plaintiff Stacy Lorraine Baker seeks review of the Social Security Administration's denial of her applications for a period of disability, disability insurance benefits, and supplemental security income. *See* 42 U.S.C. §§ 416(e), 423(d), 1382c.  Because the Court agrees that the Administrative Law Judge ("ALJ") committed legal error in weighing the opinions of Baker's treating doctors and other medical providers, it **GRANTS** Baker's motion to reverse or remand and **REMANDS** this case to the agency for further proceedings commensurate with this decision.

### I.   BACKGROUND

Baker alleged disability as of July 17, 2012, at age thirty six, arising from depression, PTSD, anxiety and panic attacks, insomnia, and major depressive and trace borderline disability disorders. [AR 1].  Following a hearing, Administrative Law Judge Barry O'Mellin denied

Baker's applications for benefits. [AR 65-86]. At step three of the five-part framework[1] used to evaluate disability, the ALJ concluded that Baker's head, neck, right shoulder, affective, anxiety, personal, and sleep disorders as well as insomnia did not meet or equal a listed impairment the agency has determined to be presumptively disabling. [AR 68-70]. At steps four and five, the ALJ determined that Baker could not perform her past positions, but retained the residual functional capacity to complete light work so long she limited the use of her right arm and interactions with the public. [AR 70-74]. Relying on the testimony of a vocation expert, the ALJ concluded that sufficient jobs existed in the national economy that matched her age, education, work experience, and limitations, such as a shipping/receiving weigher, swatch clerk, and surveillance systems monitor. [AR 78-79]. After the Appeals Council denied review of the ALJ's finding that Baker is not disabled [AR 4], Baker filed the instant complaint in this Court to reverse or remand. [Doc. 1].

## II.  STANDARD OF REVIEW

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence and the ALJ applied the correct legal standard. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). If substantial evidence supports the conclusion that the plaintiff is not disabled and the ALJ followed the law, the plaintiff is not entitled to relief. *See Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). The term "substantial evidence" means that

---

[1]The five-part sequential analysis is used to determine disability where, as here, a plaintiff's application has been denied both initially and on reconsideration. *See* 20 C.F.R. § 404.1520(a)(4)(i–v). The framework asks whether the plaintiff (1) has engaged in "substantial gainful activity" (Step 1); (2) has a "severe medically determinable" "impairment" "or a combination of impairments" that either has lasted or is expected to last at least one year (Step 2); (3) has alleged impairments that meet or equal one of the presumptively disability impairments the agency has listed (Step 3); (4) is unable to perform her "past relevant work"; (5) the retains the residual functional capacity to perform work in the national economy in light of her age, education, and work experience 20 C.F.R. § 404.1520(a)(4)(i–v). The parties do not challenge the ALJ's determination that Baker has non engaged in substantial gainful activity since her onset date, that she suffers from severe impairments at steps one and two respectively [AR 66]. For the sake of brevity, the Court does not further recount them.

which "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1118 (citation and internal quotation marks omitted). Even if the Court could reach the opposite conclusion, the decision must stand if the record as a whole is not "overwhelmed by other evidence" to the contrary or unless a "mere scintilla" supports it. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

### III. ANALYSIS

Baker challenges the ALJ's decision on three grounds: the ALJ (1) improperly rejected opinions of two treating doctors; (2) improperly rejected the opinions of other medical sources; (3) exceeded his proper scope in assessing Baker's credibility.

#### A. Treating Doctors

The Court agrees that the ALJ erred in assigning limited weight to the opinions of Baker's treating physiologist, Katherine Hull, Psy.D., and treating physician, Norma Perez-Abele. Opinions from treating doctors are entitled to controlling weight unless they are (1) unsupported by medically acceptable clinical and laboratory diagnostic techniques; or (2) inconsistent with the other substantial evidence in the record. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007); 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) (2016). In determining an opinion is deficient under either prong—and therefore not entitled to controlling weight—the ALJ must provide specific, legitimate reasons to allow for meaningful appellate review. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Simply repeating the governing legal standard is insufficient to meet this obligation.

In this case, the ALJ decided that Drs. Hull and Perez-Abele's opinions were undeserving of controlling weight by stating, but not *applying*, the law. In terms of Dr. Hull, the ALJ concluded her "opinion is not entitled to controlling weight, because it is not well supported by

medically acceptable clinical and laboratory diagnostic techniques and it is inconsistent with the other substantial evidence in the case record." [AR 74].  Aside from not explaining what substantial evidence conflicted with Dr. Hull's opinion, which itself is error, the ALJ's *own* recitation of Dr. Hull's treatment show Dr. Hull *did* preform clinical diagnostics.  [AR 74 (noting that Dr. Hull performed a "Global Assessment of Function"  "Medical Assessment of Ability to Do Work-Related Activities (Mental), Assessment of Adaptation to Temperament Characteristics Required By Jobs, Affective Disorders, and Anxiety Related Disorders")].  Without the ALJ's clear identification of the alleged evidentiary conflicts and specific deficiencies of the diagnostics, the Court is left without a "meaningful" record to review.

As to Dr. Perez-Abele, the ALJ again repeated the governing law without analysis. [AR 75 ("Dr. Perez-Abele's opinion is not entitled to controlling weight, because it is not well supported by medically acceptable clinical and laboratory diagnostic techniques and it is inconsistent with the other substantial evidence in the case record.")].  The Court is equally capable of reciting the law. What it may not do is conduct a *de novo* review of the record to ferret out the underlying reasons why the ALJ believes Dr. Perez-Abele's lacks support or is otherwise inconsistent with the weight of the evidence.

The ALJ's finding of inconsistency as to both providers is also difficult to reconcile with the ALJ's later statement that "the more highly qualified medical personnel, namely . . . Dr. Perez-Able and psychologist Dr. Hull . . . indicated only slight and moderate, but not marked limitations in their assessments of the claimant's work related mental abilities." [AR 75].  In other words, it is hard to understand how, on the one hand, the ALJ believes Dr. Hull and Perez-Able's opinions are inconsistent with the substantial evidence in this case and then, on the other, conclude Baker cannot work by seemingly relying on the very same "deficient" assessments.

Although the ALJ may well be correct that Ms. Baker has the residual functional capacity to perform certain jobs under both treating source's evaluations, it is not the role of the Court to resolve this internal conflict.  The ALJ should do so on remand.

Even had the ALJ properly navigated the controlling-weight analysis, it was incumbent upon the ALJ to also "give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the [limited] weight [he] assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (identifying the factors as (1) the length of the relationship  and examination frequency; (2) "the nature and extent of the treatment relationship"—types of treatment provided and testing performed; (3) the extent "to which the physician's opinion is supported by relevant evidence";  (4) the opinion's consistency with the total record; (5) whether the provider is a specialist in the particular field; and (6) any other considerations brought to the "ALJ's attention which tend to support or contradict the opinion") (citation omitted).  The ALJ did not adhere to this requirement.

In assigning "little weight"[2] to Dr. Hull's opinion, the ALJ explained that "Dr. Hull's assessments are not consistent from one of these forms to the next – for example, on the Ability to Do Work-Related Activities form, she indicated only slight and moderate limitations, with no marked limitations, and on the Adaptions to Temperament Characteristics form she indicated 'not necessary to avoid' many of the situations, which is inconsistent with her findings of 'marked' limitations on the two other forms."  [AR 74].  The ALJ's sentence is incomplete, which makes it impossible to determine whether the ALJ correctly followed the law.  Even if the

---

[2] The parties squabble about whether assigning "little weight" to a treating source's opinion is tantamount to rejecting it. Whatever the merits of this seemingly academic debate may be, it is not necessary to discern them here because the Court remands the matter for additional proceedings to allow the ALJ to fully consider the providers' assessments.

phrase "not necessary to avoid many of the situations" were given a clearer context so the Court could understand how it is inconsistent with Baker's claimed inability to engage in work-related activities, this example bears on only one factor in the analysis. The ALJ's reasoning also depends on the underlying assumption that the forms serve the same purpose, define limitation in the same way, and measure the same variables. The titles of the forms themselves make it difficult for the Court to agree that the forms serve the same purpose and employ a uniform definition of limitation. Furthermore, as Baker points out, the documents have different authors and appear to define "limitation" differently. [AR 830-41].

The ALJ determined Dr. Perez-Able's opinion was entitled to "little weight" because she is not a mental-health specialist and "her treatment notes do not support the degree of limitation indicated on the form." [AR 75]. A provider's qualifications and the internal consistency of her documentation are both valid considerations, but the ALJ gives no specific examples as to how the doctor's treatment notes are insufficient. If the standard of review were *de novo*, the Court might engage in an exercise to weigh the evidence and determine whether the doctor's treatment notes support the doctor's findings; however, the ALJ has the *legal* obligation to explain what he means. *See Langley*, 373 F.3d at 1119 ("[A]n ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight."). That Dr. Perez-Able, a trained physician, is not a certified mental health specialist, without more, does not convince the Court of the ALJ's correctness. In fact, in the paragraph following the ALJ's anemic analysis, the ALJ characterizes Dr. Perez-Able as one of "the more highly qualified medical personnel." [AR 75].

In sum, the ALJ committed reversible legal error in assessing the opinions of Baker's treating doctors. The Court will, therefore, remand the matter to the agency to properly consider the testimony of Baker's treating doctors.

### B. Other Treating Sources

The Court also agrees that the ALJ did not adequately gauge the opinions of clinical counselors Sage Rupp and Christina Bryant as well as nurse practitioner Debra Jaccard. Even though counselors and nurse practitioners are not among the "acceptable sources" entitled to controlling weight, *see* 20 CFR § 416.902(a), the ALJ must nonetheless consider the opinion of *every* treating source and provide specific, legitimate reasons in assigning weight to them. *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). The ALJ here relied—at least in part—on Rupp, Bryant, and Jaccard's lack of credentials as a licensed physician, psychiatrist, or phycologist in assigning little weight to their respective evaluations. This was legal error: a source's status as "acceptable" speaks only to the issue of controlling weight; it has nothing to do with the six- factor test reserved for assigning lesser weight to acceptable sources whose assessments are not well supported *or* non-acceptable sources.

Nonetheless, as the ALJ points out, Rupp did not provide treatment notes with her various assessments, which could certainly be a valid reason for assigning a lower degree of weight. *See Krauser*, 638 F.3d at 1330 (support for an opinion is factor to consider under the regulations). The ALJ, however, does not explain the significance he attaches to absence of the notes, and other medical consultants to which he "accords significant weight" do not offer such documentation. [AR 75]. There could be a good reason why, but there also may be an explanation why Rupp's assessment of Baker's ability to work, a test that measures capabilities at a *specific* moment in time, is likewise valid even if unaccompanied by notes. Without a

specific reason from the ALJ, the Court cannot meaningfully address the merits.  It was also within the ALJ's power to follow up with Rupp to obtain the records.  *See Maes v. Astrue*, 522 F.3d 1093, 1096-1098 (10th Cir. 2008).

The only other reasoning the ALJ gave—and the sole basis for assigning little weight to Bryant and Jaccard's opinions—is that Baker maintained stable employment in the past before she applied for benefits and theses providers do not account for her past stable jobs.  The Court is unable to understand the ALJ's point here.  Obviously, work is the antithesis of disability; but in the typical case, most plaintiffs worked *before* seeking disability.  In fact, to qualify for benefits Baker had to amass sufficient quarters of earnings, a criterion the ALJ analyzed at the threshold. [AR 56]; *see Snyder v. Shalala*, 44 F.3d 896, 897 (10th Cir. 1995) (explaining that "[i]n order to be insured, claimant had to demonstrate twenty quarters of coverage out of the previous forty quarters" and "[a] person is credited with quarters of coverage based on the wages paid") (citations omitted).  In other words, the relevant inquiry is: *after* filing her application, is the plaintiff able to engage in substantial gainful activity?

The ALJ erred in assigning little weight to Baker's treating providers.  The Court therefore remands the matter to the agency to properly consider the testimony of Baker's treating providers.

### C. Credibility Determination

In concluding that Baker is not disabled, the ALJ relied on Baker's past criminal conduct as bearing on her credibility.  It appears the parties agree that "it was not appropriate for the ALJ to consider Plaintiff's truthfulness as a factor in evaluating Plaintiff's statement concerning intensity, persistence, and limiting effects of her syndrome." [Doc. 26 at 7; Doc. 27, at 5].  Because the Court remands the matter as explained above, it will allow the agency to consider

Baker's statements without this inappropriate factor, rather than engage in the unnecessary debate as to whether the ALJ's conceded error was harmful or harmless.

## IV.  CONCLUSION

For the reasons stated above, the Court concludes that the ALJ erred in several material respects.  **IT IS, THEREFORE, ORDERED** that Plaintiff's motion to reverse and remand is **GRANTED** [Doc. 17] and the matter is **REMANDED** to the agency for proceedings consistent with this decision.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent